# ORIGINAL

1  ZIMMERMAN, LEVI & KORSINSKY, LLP
   Eduard Korsinsky
2  39 Broadway, Suite 1601
   New York, NY 10006
3  Telephone: (212) 363-7500
   Facsimile:  (212) 363-7171
4
   **HOLZER HOLZER & FISTEL, LLC**
5  Corey Holzer (364698)
6  Michael I. Fistel, Jr. (262062)
   1117 Perimeter Center West, Suite E-107
7  Atlanta, Georgia 30338
8  Telephone: (770) 392-0090
   Facsimile: (770) 392-0029
9
   Attorneys for Plaintiff
10

FILED IN CLERK'S OFFICE
U S D C   Atlanta

MAY 0 9 2007

JAMES N HATTEN, Clerk
By [signature]
                    Deputy Clerk

11          UNITED STATES DISTRICT COURT

12          NORTHERN DISTRICT OF GEORGIA

**RLV**

13

14  ELIZABETH WEISS PHILLIPS,
    derivatively on Behalf of Nominal
15  Defendant Home Depot, Inc.

16                    Plaintiff,

17       vs.

18  KENNETH G. LANGONE, ROBERT L.
    NARDELLI, CAROL B. TOME, LABAN
19  P. JACKSON, JR., DENNIS M.
    DONOVAN, FRANK L. FERNANDEZ,
20  THOMAS V. TAYLOR, JOHN L.
    CLENDENIN, CLAUDIO X.
21  GONZALEZ, BONNIE G. HILL,
    GREGORY D. BRENNEMAN,
22  MILLEDGE A. HART, III, ANGELO R.
    MOZILO, THOMAS J. RIDGE,
23  LAWRENCE R. JOHNSTON, and
    BERRY R. COX,
24
                      Defendants,
25
         and
26
    HOME DEPOT, INC.
27
28
                    Nominal Defendant.

**07 CV 1066**

Civil Action No. _____

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, by her attorneys, alleges, upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, and based upon the investigation made by and through her attorneys, the following:

## NATURE OF THE CASE

1.      This is a shareholder derivative action on behalf of Home Depot, Inc. ("Home Depot" or the "Company") against certain current and former officers and certain current and former members of its Board of Directors for violations of state law, including their breaches of fiduciary duties, waste of corporate assets, and unjust enrichment in connection with certain stock option grants to employees of the Company.

2.      A stock option grant allows an employee to purchase Company stock at a specified price (i.e., the "exercise price"), for a specified period of time.

3.      Pursuant to the Company's stock option plan, the exercise price must be no less than the low bid price of Home Depot stock on the date of the grant. If the date of the option grant is back-dated to a day on which the market price is lower than the price the day the option was granted, then the exercise price will be lower, in which case the recipient of the option pays less for the option and the company receives less money for the stock when the option is exercised.

4.      Over the past several years, Defendants have caused Home Depot to grant tens of thousands of back-dated stock options to its officers, directors and employees. This practice has allowed the officers, directors and employees to pocket millions of dollars they were not entitled to because the lower exercise prices set as a result of the back-dating allowed the recipients to collect larger profits upon sale of their Home Depot stock.

5.      As a result, these officers, directors and employees were unjustly enriched to the detriment of the Company and its shareholders, and the Company has suffered millions of dollars in damages.

## PARTIES

6.      Plaintiff Elizabeth Weiss Phillips resides at 19 Rechov Tet-Zayan, Tzfat, Israel and at all times relevant was, a shareholder of nominal defendant Home Depot.

**The Nominal Defendant**

7.      Nominal defendant Home Depot is incorporated under the laws of the State of Delaware with its headquarters located at 2455 Paces Ferry Road, NW, Atlanta, Georgia 30339.  Home Depot is the world's largest home improvement retailer and is the second largest retailer in the United States after Wal-Mart, based on net sales.

**The Officer Defendants**

8.      Defendant Robert L. Nardelli ("Nardelli") has served as Home Depot's President and CEO since December 2000 and Chairman of the Board since 2002. Nardelli also serves as Chair of the Executive Committee of the Board of Directors ("Executive Committee").

9.      Defendant Carol B. Tome ("Tome") has served as Home Depot's Vice President and Treasurer since 1995 and Chief Financial Officer and Executive Vice President since May 2001.

10.      Defendant Dennis M. Donovan ("Donovan") has served as Home Depot's Senior Vice President since April 2001.

11.      Defendant Frank Fernandez ("Fernandez") has served as Home Depot's Executive Vice President, General Counsel and Secretary since April 2001.

12.      Defendant Thomas V. Taylor ("Taylor") has served as Home Depot's Executive Vice President, Merchandising and Marketing since 2005.

**13.**      Defendants Nardelli, Tome, Donovan, Fernandez and Taylor are sometimes collectively referred to herein as the "Officer Defendants."

1

2  **The Director Defendants**

3      14.     Defendant Kenneth G. Langone ("Langone") has served as a director of

4  Home Depot since 1978 and was named Lead Director in 1998.  At all relevant times

5  hereto, Langone has served as a member of the Executive Committee, as a member

6  of the Audit Committee of the Board of Directors ("Audit Committee"), as a member

7  of the Nominating Committee of the Board of Directors ("Nominating Committee)

8  and as a member of the Corporate Governance Committee of the Board of Directors

9  ("Governance Committee").

10      15.     Defendant Laban P. Jackson, Jr. ("Jackson") has served as a director of

11  Home Depot since July 2004 and as a member of the Audit Committee.

12      16.     Defendant John L. Clendenin ("Clendenin") has served as a director of

13  Home Depot since 1996 and, at all relevant time, has served as a member of the

14  Audit Committee, Compensation Committee of the Board of Directors

15  ("Compensation Committee") and Leadership Development and Compensation

16  Committee of the Board of Directors ("Compensation Committee").

17      17.     Defendant Claudio X. Gonzalez ("Gonzalez") has served as a director of

18  Home Depot since 2001 and serves on the Audit, Compensation Committee.

19      18.     Defendant Bonnie G. Hill ("Hill") has served as a director of Home

20  Depot since 1999 and serves on the Compensation Committee.

21      19.     Defendant Gregory D. Brenneman ("Brenneman") has served as a

22  director of Home Depot since 2000 and serves on the Audit Committee.

23      20.     Defendant Milledge A. Hart, III ("Hart") has served as a director of

24  Home Depot since 1978 and is a member of the Executive Committee.

25      21.     Defendant Angelo R. Mozilo ("Mozilo") has served as a director of

26  Home Depot since 2006.

27      22.     Defendant Thomas J. Ridge ("Ridge") has served as a director of Home

28  Depot since 2005.

23.     Defendant Lawrence R. Johnston ("Johnston") has served as a director of Home Depot since 2004.

24.     Defendant Berry R. Cox ("Cox") served as a director of Home Depot from 1978 until his sudden retirement in June 2005.

25.     Defendants Langone, Jackson, Clendenin, Gonzalez and Brenneman are sometimes collectively referred to as the "Audit Committee Defendants."

26.     Defendants Clendenin, Gonzalez and Hill are sometimes collectively referred to as the "Compensation Committee Defendants."

27.     Defendants Nardelli, Langone, Jackson, Clendenin, Gonzalez, Hill, Brenneman, Hart, Mozilo, Ridge, Johnston and Cox are sometimes collectively referred to as the "Director Defendants."

28.     Defendants Langone, Nardelli, Tome, Jackson, Jr., Donovan, Fernandez, Taylor, Clendenin, Gonzalez, Hill, Brenneman, Hart, Mozilo, Ridge, Johnston and Cox are sometimes collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over all claims asserted herein because Home Depot conducts business in Georgia and has its principal place of business in Atlanta, Georgia.  Additionally, the Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.

30.     Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein occurred in this district. Moreover, Defendants have received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

## **FACTS**

31.     Between 1996 and 2000, the Individual Defendants caused Home Depot to grant tens of thousands of under-priced stock options to its officers, directors and employees.

32.     Under the terms of Home Depot's stock option plan, the exercise price of option grants was to be no less than the low bid price of Home Depot's stock on the date of the grant.

33.     It was not coincidently that each and every one of the stock options granted to the officers, directors and employees were dated just before a substantial rise in Home Depot's stock price. For example, Individual Defendants dated all of Home Depot's 1995, 1996, 1998 and 2000 option grants to the officers, directors and employees on the day Home Depot reached its lowest price of the month.

34.     The reason that every single option grant was followed by a substantial run-up in Home Depot's stock price was not due to the officers, directors and employees' good luck, but rather due to a scheme known as back-dating perpetrated by the Individual Defendants.

35.     The Compensation Committee manipulated the grant dates so that the reported dates of the grants were not the actual dates on which the options were granted.  In other words, the Compensation Committee back-dated the stock option grants to dates when the market price of Home Depot's stock was at a low point and was about to rebound.  By manipulating the grant dates to coincide with low points in the Company's stock price, the Compensation Committee was able to provide the officers, directors and employees with the lowest possible exercise price for their option grants.  As a result, Home Depot has received and will continue to receive less money from the officers, directors and employees when they exercise their options at strike prices substantially lower than if the options had not been back-dated.

36.     This practice of back-dating stock options not only benefited certain of the Individual Defendants at the direct expense of Home Depot and its shareholders,

but also resulted in the overstatement of Home Depot's profits. Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of the grant exceeds the exercise price of the options, the Company must recognize the difference as an expense. This is because options priced below the stock's fair market value when they were awarded brought the recipient an instant paper gain that must be accounted for as additional compensation and therefore treated as an expense to the Company.

37.     This practice of back-dating stock options has produced staggering financial revenue to certain of the Individual Defendants.  Specifically, Defendant Langone sold 2.0 million shares for insider trading proceeds of more than $70.3 million, Defendant Nardelli sold 271,581 Home Depot shares for proceeds of more than $11.3 million,  Defendant Tome sold 85,500 Home Depot shares for proceeds of more than $3.3 million, Defendant Donovan sold 275,958 Home Depot shares for proceeds of more than $10.2 million, Defendant Fernandez sold 72,667 Home Depot shares for proceeds of more than $3.0 million, Defendant Taylor sold 55,500 Home Depot shares for proceeds of more than $2.3 million, Defendant Clendenin sold 6,170 Home Depot shares for proceeds of more than $259,271 and Defendant Hart sold 1.98 million Home Depot shares for proceeds of more than $49.6 million.

38.     On June 16, 2006, Home Depot announced the results of its investigation concerning stock option grants. Specifically, the Company stated:

> The Home Depot...conducted a review of its stock option grant
> practices and procedures since 1996....The Company has not
> found any instances where stock options were retroactively
> priced....In five instances prior to December 2000, the date of the
> meeting or resolution approving the grant was later than that used
> to determine the stock option exercise price. In three of those five
> instances, the marker price of the Company's stock on the award
> date was higher than that on the date the exercise price was
> determined....The Company estimates that the unrecorded
> expense over the affected period was more than $10 million in the

aggregate. As a result, the Company does not intend to restate
prior period financial statements.

39.    Moreover, in causing Home Depot to grant tens of thousands of under-priced stock options to its officers, directors and employees, which resulted in over-compensation for these employees, the Individual Defendants caused Home Depot to understate its compensation expenses and artificially inflate its publicly reported financial results.

40.    The odds that the officers, directors and employees received their stock option grants legitimately, rather than through an illegal stock option back-dating scheme, is infinitesimal.

41.    The back-dating allegations alleged herein is further corroborated by a Wall Street Journal article, published March 18, 2006, under the headline "The Perfect Payday" that described similar stock option backdating practices by numerous companies. According to the article, the odds that every single stock option grant to an officer is followed by a substantial rise in the stock's price are one in several billion.  Consequently, many of these companies have become the subject of investigations by regulatory authorities, such as the SEC, U.S. Justice Department, and States' Attorney Generals.

**OBLIGATIONS AND DUTIES OF THE DEFENDANTS**

42.    By reason of their positions as officers and/or directors and fiduciaries of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the

Complaint                                    8

Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

43.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

44.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a. exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

b. exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c. exercise reasonable control and supervision over the officers and employees of the Company;

d. establish guidelines and policies adequately governing the Company's stock option accounting and stock option granting practices;

e. to maintain and implement an adequate and functioning system of internal financial and accounting controls and management information systems, such that the Company's assets would be safeguarded, its financial statements and information would be accurately recorded and reported, and corporate managers would be given prompt notice of serious problems or divergences so that risk to the corporation would be minimized;

f. exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any

reports or examinations, audits, or other financial information concerning the financial condition of the Company;

g. exercise good faith in ensuring that the Company's financial statements were prepared in accordance with GAAP; and

h. refrain from unduly benefiting themselves and other Company insiders at the expense of the Company and/or its stockholders.

## DEMAND WOULD BE FUTILE

45. Plaintiff brings this action derivatively on behalf of the Company to redress the injuries suffered by the Company as a direct result of Individual Defendants' violations of the state laws alleged herein.

46. The Board currently consists of twelve directors: Defendants Brenneman, Clendenin, Gonzalez, Hart, Hill, Jackson, Johnston, Langone and Mozilo and directors David H. Batchelder, Frank Blake and Helen Johnson-Leipold.

47. Plaintiff did not make demand on the Board of Directors of the Company to bring this action on behalf of the Company because such demand would be futile for the following reasons:

a. Defendants/Directors Clendenin and Langone were recipients of the stock options which Plaintiff alleges were back-dated. Because Clendenin and Langone received a personal financial benefit from the challenged transactions, they are interested and incapable of independently considering a demand to commence this action. Therefore, demand upon them is futile.

b. Defendants/Directors Clendenin, Gonzalez and Hill had enhanced responsibilities as members of the Company's Compensation Committee. The Compensation Committee determined the stock option awards for the Officer Defendants and administered Home Depot's stock option plan. The conduct of the members of the Compensation Committee is central to the allegations in this lawsuit. Because of the

substantial likelihood of liability of Clendenin, Gonzalez and Hill as members of the Compensation Committee, they are interested and incapable of independently considering a demand to commence this action. Therefore, demand upon them is futile.

c. Defendants/Directors Langone, Jackson, Clendenin, Gonzalez and Brenneman had enhanced responsibility as members of the Audit Committee. The Audit Committee was responsible for, among other things monitoring the Company's financial reporting process and internal control system; reviewing and approving all related party transactions involving the Company and any director, executive officer or family member; and reviewing the financial statements and any reports contained in the annual report or other financial information submitted to any governmental body. Because of the substantial likelihood of liability of Langone, Jackson, Clendenin, Gonzalez and Brenneman as members of the Audit Committee, they too are interested and incapable of independently considering a demand to commence this action. Therefore, demand upon them is futile.

d. Defendants/Directors Langone, Nardelli, Tome, Jackson, Donovan, Fernandez, Taylor, Clendenin, Gonzalez, Hill, Brenneman, Hart and Cox authorized the filing of Proxy statements, in support of their nomination as directors, which failed to disclose that the Defendants' stock options had been back-dated. Any suit by the Defendants to remedy the wrongs complained of herein would undoubtedly also expose them to suit for securities fraud and proxy violations. Thus, they are interested and incapable of independently considering a demand to commence this action. Therefore, demand upon them is futile.

e. The Home Depot Board of Directors and senior management, as detailed herein, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Home Depot's shareholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors, and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting. Defendants violated the federal securities laws and breached their fiduciary duties owed to Home Depot in that they failed to prevent and correct the improper stock option granting and

financial reporting. Thus, they are interested and incapable of independently considering a demand to commence this action. Therefore, demand upon them is futile.

## COUNT I

## AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

48.     Plaintiff incorporates the preceding paragraphs with the same force and effect as if they were set forth here in full.

49.     The Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationship, the Defendants owed and continue to owe the Company the highest obligation of good faith, fair dealing, loyalty and honesty.

50.     Each of the Defendants violated and breached their fiduciary duties of good faith, fair dealing, loyalty, and honesty.

51.     Each of the Defendants breached their fiduciary duty, by authorizing, or by abdication of duty, as follows:

      a.  permitting the stock options granted to the Defendants to be back-dated;

      b.  misrepresenting the financial results of the Company and disseminating to Home Depot shareholders and the market false financial statements that improperly recorded and accounted for the back-dated option grants;

      c.  failing to recover the ill-gotten gains of the recipients of the stock options or to correct the Company's publicly reported financial results.

52.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, the Company has sustained significant monetary damages. As a result of the conduct alleged herein, Defendants are liable to the Company.

## COUNT II

## <u>AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT</u>

53.     Plaintiff incorporates the preceding paragraphs with the same force and effect as if they were set forth here in full.

54.     By their wrongful acts and omissions, each Defendant was unjustly enriched at the expense of and to the detriment of Home Depot and its shareholders. Certain of the executive officers and/or directors named as a defendant herein received stock options from Home Depot during the relevant period.

55.     Plaintiff seeks restitution from these Defendants, and the Court should order them to disgorge to the Company all of the back-dated stock options they received, including the proceeds of any such options that have been exercised sold, pledged or otherwise monetized, improvidently granted loans and/or incentive compensation obtained by these Defendants during the relevant period, and each of them, from their wrongful conduct, fiduciary breaches and unjust enrichment as provided by state law.

56.     Plaintiff, as a shareholder and representative of Home Depot, seeks restitution and disgorgement of profits for the Company as hereinafter set forth.

## COUNT III

## <u>AGAINST ALL DEFENDANTS FOR WASTE OF CORPORATE ASSETS</u>

57.     Plaintiff incorporates the preceding paragraphs with the same force and effect as if they were set forth here in full.

58.     By the foregoing conduct, the Defendants wasted corporate assets, by among other things, making improper stock option grants to certain of its executive officers, failing to recover them, and exposing the Company to civil and criminal liability, for which they are liable.

59.     As a result of the waste of corporate assets, Defendants are liable to the Company.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants as follows:

A.     Against all of the Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties, violations of law, waste of corporate assets, and unjust enrichment.

B.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and statutory provisions sued hereunder, including disgorging, attaching, impounding, imposing a constructive trust on or otherwise restricting the value of improvidently granted loans or stock options and/or the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Home Depot has an effective remedy;

C.   Awarding to plaintiff the costs and disbursements of the action, including reasonable attorney's fees, and accountants' and experts' fees and expenses; and

D.   Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  May 9, 2007                    Respectfully submitted,

                                       **HOLZER HOLZER & FISTEL, LLC**

                                       Corey Holzer (364698)
                                       Michael I. Fistel, Jr. (262062)
                                       1117 Perimeter Center West
                                       Suite E-107
                                       Atlanta, Georgia  30338
                                       Telephone: (770) 392-0090
                                       Facsimile: (770) 392-0029

                                       By: _____

                                            Corey Holzer

                                       ZIMMERMAN, LEVI & KORSINSKY LLP
                                       Eduard Korsinsky
                                       39 Broadway, Suite 1601
                                       New York, NY 10006
                                       Telephone: (212) 363-7500
                                       Facsimile: (212) 363-7171

                                       Sen. Roger Bedford, Jr.
                                       P.O. Box 370
                                       Russellville, AL 35653
                                       Telephone: (334) 242-7862
                                       Facsimile:  (256) 332-7821

                                       Attorneys for Plaintiff

## VERIFICATION

I, ____ ____ Weiss, declare that I have reviewed the Complaint ("Complaint") prepared ___ behalf of HOME DEPOT, INC. (NYSE:HD) and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations __ which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of common stock during the entire period in which the wrongful conduct alleged and complained of in the Complaint was occurring.

May 2, 2___                          *Elizabeth Weiss Phillips*

Complaint                                    17